# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDALL OWENS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) | Case No. CIV-18-00626-SM |

## MEMORANDUM OPINION AND ORDER

Randall Owens (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's final decision he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 15, 17.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court reverses the Commissioner's decision and remands for further proceedings.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to the original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C.   Relevant findings.**

**1.   Administrative Law Judge findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. *See* AR 16-29; *see also* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since his alleged onset date of June 1, 2012;

(2)   had the severe impairments of first, degenerative disc disease of the back with fibrosis along right side and second, hypertension;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the residual functional capacity[2] to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) except with nonexertional limitations;

(5)   could not perform his past relevant work;

(6)   could perform jobs that exist in significant numbers in the national economy, such as kitchen helper, warehouse worker, and hand packager; and so,

(7)   was not disabled.

AR 17-29.

---

[2]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### 2. Appeals Council findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision in this case. *Id.* at 1-6; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.
### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In applying that standard, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

### B. Issue for judicial review.

Plaintiff contends that the ALJ "relied heavily on a medical expert that had a standard different than that of the Commissioner of how pain can influence an individual's ability to perform work activities," and so, substantial

evidence does not support the RFC that "the ALJ based on that testimony." Doc. 23, at 1, 8. Plaintiff argues the "ALJ's error was not harmless because a finding that pain symptoms allowed [Plaintiff] to perform only light or sedentary work would have directed the ALJ to find [Plaintiff] disabled." *Id.* at 10.

Specifically, Plaintiff argues that while the Commissioner has recognized that "pain can result in an exertional limitation if it limits an individual's ability to perform one of the strength activities (e.g., lifting)," Dr. Sklaroff testified that severe pain would never interfere with a person's ability to lift. *See id.*; SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996); AR 96. Dr. Sklaroff testified that pain does "not impair[ ] the ability to lift" because lifting is "a muscular function," and opined that the "experience of pain would be mutually exclusive of whether or not there is lifting or not lifting occurring concomitantly." AR 98.

Plaintiff points out that though Dr. Sklaroff agreed there is "objective medical evidence supporting that [Plaintiff] could be suffering from severe pain at least intermittently," he still maintained that "pain really has no play in determining the amount a person could lift or their endurance of lifting throughout the day." *Id.* at 99. Dr. Sklaroff agreed that Plaintiff "has physical findings that would support his allegations of pain, *id.* at 95-96, "needs

5

analgesics for his back pain, *id.* at 89, his "condition does, in fact, cause pain," *id.* at 92.

> Dr. Sklaroff opined that Plaintiff's RFC demonstrates that Plaintiff:
>
>> should be able to stand, sit, or walk, any one of them up to six hours during a normal eight-hour day with normal breaks. He should be able to go through whatever postural manipulations, stand, sit, walk, reach et cetera without problem. He needs analgesics for his back pain, that's fine. He should be able to lift 50 pounds occasionally, 25 pounds frequently. If he were to get a more recent MRI and show remediable lesion . . . that would be great for follow-up surgery number three . . . And he could also get nerve blocks, et cetera if the pain is problematic and the only impediment to working. There is no other impairment that affects the assessment in the eyes, ears, special senses, hands, and feet. And in terms of the environment because of psych issues, no heights, ropes, scaffolds, ladders, or hazardous machinery.

*Id.* at 89. Dr. Sklaroff clarified that Plaintiff could, "in an 8-hour time period . . . lift 50 pounds 20 minutes out of every hour, 8 hours in a row . . . ." *Id.* at 92.

### C. The ALJ's consideration of Dr. Robert Sklaroff's testimony.

The ALJ gave "great weight" to Dr. Sklaroff's opinion, finding his "opinion is consistent with the substantial evidence and supported by explanation." *Id.* at 25. The ALJ provided a detailed summary of Dr. Sklaroff's assessment. *See id.* at 25-26.

6

The ALJ considered and agreed with Dr. Sklaroff's review of the medical records from Plaintiff's two back surgeries. *Id.* at 25. Dr. Sklaroff noted Plaintiff was taking blood pressure medication, has a half-pack per day smoking habit, and drinks a six-pack of beer daily, a not-recent history of methamphetamine use, and a history of depression. *Id.*

Dr. Sklaroff noted the lack of any interventional pain management, *id.* at 27, and the ALJ noted only one April 2014 note from a pain-management clinic, *id.* at 25, 529-33. The ALJ noted that in August 2015, a primary care physician stated Plaintiff was "fired from the clinic reportedly due to marijuana use." *Id.* at 25.

The ALJ noted Dr. Sklaroff's testimony in response to Plaintiff's 2014 pain management assessment. Dr. Sklaroff considered Plaintiff's "reported subjective symptoms at that time" which included "pain extend[ing] to the right thigh and leg," "numb sensation . . . in the middle toes," "[a]ll lumbar spine movement increases the pain and resting decreases the pain," "[p]rior use of tramadol by itself was of no benefit for pain control." *Id.* The ALJ noted that Dr. Sklaroff stated the objective musculoskeletal examination findings, "despite those subjective symptoms," were "within normal limits, except as noted." *Id.* The ALJ noted that Dr. Sklaroff testified that the "noted signs did not include any decreased strength." *Id.*

7

Importantly, the ALJ stated "Dr. Sklaroff noted that [Plaintiff's] condition does cause pain. Dr. Sklaroff did not consider pain or decreased sensation as bearing on the ability to lift. The ability to lift is based on the muscle evaluation which was normal. Dr. Sklaroff testified that the evidence supporting his RFC is the totality of the record and the fact that there is no motor weakness." *Id.* at 26-27. The ALJ summarized Dr. Sklaroff's RFC assessment, and stated he "concurs with that assessment and it is the basis for the medication residual functional capacity set forth above." *Id.* at 26. In giving "little weight" to the opinion of Dr. Linsenmeyer, the ALJ stated he "gives greater weight to Dr. Sklaroff's opinion because it is supported with explanation (no evidence of motor loss) and is consistent with the overall treatment history here." *Id.* at 27.

### D. The ALJ's consideration of Plaintiff's pain.

A plaintiff's subjective allegation of pain is not sufficient in itself to establish disability. *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, that could reasonably be expected to produce the alleged disabling pain. *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); 42 U.S.C. § 423(d)(5)(A).

> The framework for the proper analysis of [Plaintiff's] evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether [Plaintiff] established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the [Plaintiff's] subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [Plaintiff's] pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992).

"Objective" evidence is any evidence, whether physiological or psychological, that can be discovered and substantiated by external testing. *Luna*, 834 F.2d at 162. "Subjective" evidence, on the other hand, consists of statements by a Plaintiff or other witnesses that can be evaluated only on the basis of credibility. *Id.* at 162 n.2.

The ALJ has failed to make required findings pursuant to the three-step process set out in *Luna*. Plaintiff established a pain-producing impairment— degenerative disc disease of the back with fibrosis along right side. The ALJ found this to be a severe impairment. AR 18. There is at least a "loose nexus" between this impairment and Plaintiff's subjective allegations of pain. Therefore, the ALJ was required to consider his assertions of pain and decide whether he believed them. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

The undersigned agrees with Plaintiff that the ALJ inappropriately adopted Dr. Sklaroff's assessment of the relationship between Plaintiff's subjective symptoms and the objective findings. When discussing Plaintiff's April 2014 pain management assessment, the ALJ summarized Plaintiff's subjective symptoms at the time and noted that Dr. Sklaroff stated the objective musculoskeletal examination findings, "*despite those subjective symptoms*," were "within normal limits, except as noted." AR 26 (emphasis added). The ALJ noted that Dr. Sklaroff testified that the "noted signs did not include any decreased strength." *Id.* The ALJ stated "Dr. Sklaroff noted that [Plaintiff's] condition does cause pain. Dr. Sklaroff did not consider pain or decreased sensation as bearing on the ability to lift. The ability to lift is based on the muscle evaluation which was normal." *Id.* The ALJ does not provide his own analysis of these subjective pain symptoms, nor does he explain whether he considered "decreased sensation" and Plaintiff's other symptoms to have an effect on Plaintiff's ability to lift. Instead, the ALJ improperly adopted Dr. Sklaroff's reasoning in full, which erroneously excludes pain entirely from Plaintiff's RFC assessment.

Further, the court evaluates the ALJ's decision "based solely on the reasons stated in the decision." *Robinson*, 366 F.3d at 1084. The Commissioner argues that "contrary to Plaintiff's assertions that the ALJ did not resolve conflicts between the medical opinions at issue as to the effect of

10

Plaintiff's symptoms on his RFC and the Commissioner's guidance in this regard . . . the ALJ reasonably did so." Doc. 26, at 11. The Commissioner then outlines the ALJ's separate assessments of the medical evidence of record, Plaintiff's subjective symptoms, and Plaintiff's activities of daily living. *See id.* at 12-14. However, the Commissioner does not point to anything in the ALJ's opinion that shows the ALJ acknowledged and resolved this conflict between Dr. Sklaroff's opinions and SSA guidelines. The Commissioner's argument simply provides post-hoc rationales for the ALJ's decision. *See, e.g.*, *Allen v. Barnhart,* 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

The ALJ's error is not harmless. Harmless error may apply "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way." *Allen*, 357 F.3d at 1145. That exceptional circumstance does not exist here. As Plaintiff underscores, it is the ALJ, not a medical expert, who is charged with determining Plaintiff's RFC based upon the medical record. Doc. 23, at 12; *see* SSR 96-5p, 1996 WL 374183, at *2, *5 (July 2, 1996). Here, the ALJ ignored a clear discrepancy between SSA

guidelines and the reasoning underlying Dr. Sklaroff's medical opinion—which was given "great weight" and, in the ALJ's words, provided the "basis for the medication residual functional capacity." *See* AR 26. The ALJ's RFC is not supported by substantial evidence, and the ALJ's incomplete analysis of the effect of Plaintiff's pain on his ability to perform work requires reversal of the Commissioner's decision and remand for further proceedings.

## III. Conclusion.

The court REVERSES and REMANDS the Commissioner's decision.
ENTERED this 17th day of January, 2019.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE